**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENT M. WILLIAMS, | CASE NO. 1:05-cv-00715 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| JO ANNE B. BARNHART Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| Defendant. | |

Plaintiff Kent M. Williams ("claimant") seeks judicial review of an administrative decision denying his claims for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on May 27, 2005 (Doc. 1), and his opening brief on January 4, 2006.  (Doc. 13).  The Commissioner filed her opposition on January 31, 2006 (Doc. 16).  Claimant's reply brief was filed on February 15, 2006.  (Doc. 17).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge.  (Docs. 10 and 12).  By an order dated March 24, 2006, this action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 18).

///

**JURISDICTION**

On July 16, 2001, claimant filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, respectively. (Administrative Record ("AR") 156-59, 433-36). Claimant's applications were denied initially (AR 132-35) and on reconsideration (AR 138-42) and, after a hearing on August 13, 2002 (AR 38-63), Administrative Law Judge ("ALJ") James P. Berry found that claimant was not disabled in a written determination dated September 24, 2002. (AR 124-28). The Appeals Council granted claimant's request for review and, on March 3, 2004, remanded the case to the ALJ for further proceedings. (AR 130-131). In its remand order, the Appeals Council noted the following two issues: (1) "[t]here was lay witness testimony at the hearing, but the [ALJ] did not provide specific reasons for rejecting the lay witness' testimony" and (2) "in evaluating the claimant's subjective complaints . . . adequate rationale is not provided." (AR 130). Upon remand, ALJ Berry conducted another hearing on August 24, 2004 (AR 69-114), and again found claimant not disabled in a written determination dated September 24, 2004. (AR 15-22). Claimant once again sought review by the Appeals Council, but it denied review on April 8, 2005 (AR 6-8), leaving the ALJ's decision of September 24, 2004, as the final decision of the Commissioner. On May 27, 2005, within sixty days of the Appeals Council decision, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was 48 years old at the time of the administrative hearing before ALJ Berry. (AR 72). At the time of the hearing, claimant, a 6' 10" man, weighed 575 pounds. (AR 73). It is this obesity, combined with pulmonary problems, sleep apnea and issues related to a broken ankle, that form the substance of claimant's impairments. ( 84-90, 174-75). Claimant testified that he had a high school diploma, some community college schooling in automotive repair, and additional training as a truck driver. (AR 73-74). Claimant last worked in January 2001 as a driver operator, a job which required him to tow, repair and operate 15,000 pound World War II vintage 60" anti-aircraft searchlights. (AR 74-76). In addition to this job, claimant testified that he had work

experience in a warehouse, as well as assembly, installation and design work for a home weather-stripping company. (AR 77-78). Claimant stated that he stopped working because he ran out of breath when he tried to perform his job. (AR 78).

As to his medical condition, claimant testified that he has sleep apnea and requires the use of a BiPAP machine whenever he sleeps, during a nap or otherwise. (AR 73). A consequence of the sleep apnea, according to claimant, is that he suffers from fatigue during the day from lack of rest during the night. (Id.) In addition to sleep apnea, claimant testified that he has emphysema which causes shortness of breath. (AR 81-82). According to claimant, he often has to stop to catch his breath, even during a very short walk. (AR 82). Claimant smokes, has tried to quit, but has been unsuccessful except insofar as he has cut down from two packs a day several years ago to about five cigarettes a day at the time of the hearing. (AR 82-83). With respect to his weight, claimant testified that his doctor had recommended bariatric surgery, but that he cannot afford the procedure. (AR 83-84). Finally, claimant described an accident that occurred on or about December 27, 2002, when he sat on a chair that collapsed under his weight. (AR 84-85). This incident, which required hospitalization and then a wheelchair, broke claimant's right ankle, requiring four pins, ten screws and a plate in the ankle. (AR 85). Claimant testified that from the time he broke his ankle until he got out of the wheelchair was a little over nine months. (AR 86). Claimant's ankle still swells up constantly, requiring him to keep his foot elevated most of the time. (AR 86-87). Claimant also testified that he suffers migraine headaches about twice a month on average, periodically gets cyst-like lesions across his lower stomach, and also suffers from depression for which he takes Prozac. (AR 93-94, 97).

As to his daily life and activities, claimant testified that he lives in a house with his girlfriend. (AR 73). He claimed to be basically a shut-in because he cannot walk without becoming winded and without pain from his ankle. (AR 83). Claimant testified that he can only stand for five minutes or less at a time and that, for fear of injuring his ankle, he tries no to pick up anything heavier than a spoon or fork. (AR 89-90). Due to his fatigue from sleep apnea, claimant stated that he takes one-to-four-hour naps several times a day. (AR 92). When not napping, claimant testified that he watches television, plays solitaire, and spends a little time on the computer. (AR 93). Asked about

medical records stating that he used marijuana and speed, claimant stated that they were wrong, and that he had only reported having used these drugs in the past. (AR 93). Finally, when questioned by the ALJ as to his exertional limitations, claimant stated that he can lift five pounds at most, carry two pounds at most, stand no more than two hours in an eight-hour period, and sit eight-hours with his foot raised. (AR 96-97).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the analysis proceeds to step two, which considers whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work he has performed in the past. If claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e),

416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error'")(quoting Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) ("[t]he [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence")(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988).

## **ALJ'S FINDINGS**

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity since January 31, 2001." (AR 20).

**Step Two**

At step two, the ALJ found that claimant has the "severe" medically determinable impairments of obesity and sleep apnea. (AR 16, 20). The ALJ also observed that claimant suffers from polysubstance abuse and depression, but that these impairments are non-severe because they have no more than a minimal effect upon claimant's ability to function. (AR 16).

**Step Three**

At step three, the ALJ assessed whether claimant's impairments, while severe, are among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of

Impairments). The ALJ concluded that claimant's impairments "do not meet, equal, or approach the level of severity discussed in the applicable sections in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4." (AR 16). Accordingly, ALJ Baker found that claimant does not have an impairment or combination of impairments listed or medically equal to the Listed impairments. (AR 20).

**Step Four**

At step four, the ALJ concluded that claimant is unable to perform his past work as a lighting equipment operator and a general clerk. (AR 21).

**Step Five**

At step five, the ALJ found that claimant had the residual functional capacity to perform sedentary work: lifting and carrying 10 pounds occasionally and up to 10 pounds frequently, standing and/or walking for 2 to 4 hours in a workday; sitting 6 hours in a workday; and occasional climbing, stooping, kneeling, crouching and crawling, with the additional consideration of a need to avoid concentrated exposure to pulmonary irritants. (AR 16, 19, 21). With these limitations, and given claimant's age, education and work experience, the ALJ noted that a finding of not-disabled was directed under "the Grids," 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.21. (AR 21). In addition, and using the Grids only as a framework for decision-making, the ALJ found that there were a significant number of jobs in the national economy that claimant could perform, including information clerk, (1,900 positions in California and 56,000 nationally), charge account clerk (2,800 positions in California and 46,000 nationally) and assembler (5,500 positions in California and 82,000 nationally). (AR 20-21). The ALJ therefore concluded that claimant was not disabled under the Act. (AR 21).

**ISSUES**

Claimant's Opening Brief raised the following issue for consideration:

1. Whether the ALJ properly evaluated claimant's residual functional capacity.
2. Whether the ALJ should have considered claimant for a closed period of disability.
3. Whether the ALJ properly assessed the severity of claimant's depression.

///

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**1.    Whether the ALJ properly evaluated claimant's residual functional capacity.**

Claimant asserts that the ALJ erred in determining that he has the residual functional capacity ("RFC") to lift and carry 10 pounds occasionally and frequently, stand/walk for up to 2 to 4 hours a day, sit for 6 hours a day, occasionally climb, stoop, kneel, crouch and crawl, and avoid concentrated exposure to pulmonary irritants. (Doc. 13, p. 3). According to claimant, this RFC was based upon an August 29, 2001 opinion by consultative examiner Emanuel Dozier, M.D., an opinion that is invalid because it pre-dates an ankle injury suffered by claimant on December 27, 2002. (Doc. 13, pp. 3-4). Claimant also asserts that Dr. Dozier's opinion was contradicted by a reviewing state agency physician. (Doc. 13, pp. 5-6). Finally, claimant contends that his RFC should have been eroded by his obesity and sleep apnea. (Doc. 13, p. 6) The Court disagrees on all three counts.

**I.    Impact of ankle injury**

With respect to the impact of claimant's ankle injury, it is true that Dr. Dozier consultatively examined claimant on August 29, 2001 and determined the RFC as stated above. (AR 228-32). It is also true that claimant had open reduction, internal fixation ("ORIF") surgery on his right ankle on December 28, 2002. (AR 372, 418). However, prior to adopting Dr. Dozier's RFC assessment, the ALJ explicitly considered the medical evidence of record regarding claimant's right ankle fracture and recovery. (AR 16, 18). In doing so, the ALJ correctly noted that a September 10, 2003 x-ray showed the ankle fracture to be relatively well healed (AR 16, 378), a finding confirmed by another x-ray on January 28, 2004. (AR 16).[1] Given the objective medical evidence that claimant's ankle fracture had healed, substantial evidence supports the ALJ's conclusion that Dr. Dozier's original RFC assessment remained valid. Jones v. Heckler, 760 F.2d at 995 (court must uphold the

///

---

[1] Impressions from the January 28, 2004 x-ray included comments that claimant's ankle fracture was "well healed" and that there had been "no significant change . . . as compared to the previous study of 9/10/03." (371).

1  Commissioner's decision, made through an ALJ, when the determination is supported by substantial
2  evidence).

3        **ii.**      **Disagreement between consultative examiner and reviewing agency physician**

4        Second, it is true that a reviewing state agency physician, Lavanya Bobba, M.D., completed a
5  check-list RFC assessment - without benefit of a physical examination - in which she checked a box
6  stating that claimant could sit for "less than about 6 hours in an 8 hour-workday." (AR 317). This
7  differs from Dr. Dozier, who wrote, after an examination, that claimant could sit for 6 hours in an
8  eight-hour workday. (Doc. 13, p. 5, AR 232).[2]  However, as stated by ALJ Berry, the general
9  conclusion of both physicians was the same, namely, that claimant was capable of sedentary work.
10 (AR 19, 232, 325). Thus, handwritten notes on a document signed by Dr. Bobba show that she
11 "agree[d]" that the "CE [consultative examination] . . . findings support . . . sedentary
12 w/environmental restrictions." (AR 325). Moreover, and to the extent there was a difference of
13 opinion as to any one of the exertional components underlying a "sedentary" residual functional
14 capacity, ALJ Berry properly accorded greater weight to the opinion of the examining physician,
15 Dr. Dozier. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995)("greater weight is accorded to
16 the opinion of an examining physician than a non-examining physician"). Accordingly, substantial
17 evidence plainly supports the RFC assessment adopted by ALJ Berry. <u>See</u> <u>Jones</u>, 760 F.2d at 995
18 (court must uphold determination that is supported by substantial evidence).

19       **iii.**      **Erosion of RFC by obesity and sleep apnea**

20       Finally, claimant asserts that his residual functional capacity should have been eroded - by
21 some unstated amount - by reason of his morbid obesity and sleep apnea (Doc. 13, p. 6). However,
22 this argument misses the point that claimant's obesity and sleep apnea were explicitly considered and
23 factored into the RFC assessments performed by Drs. Dozier and Bobba. Dr. Dozier discussed
24 claimant's sleep apnea and obesity, including reference to a potentially beneficial future procedure
25 (bariatric surgery), before stating his conclusion as to claimant's current, sedentary, exertional
26 capacity. (AR 232). Likewise, Dr. Bobba explicitly listed "obesity," "sleep apnea" and "COPD" as

27
28     [2] At the administrative hearing, claimant himself testified that "I could probably sit eight hours, but I have to have my foot up." (AR 97).

the "evidence support[ing] [her] conclusions" as to her findings regarding claimant's lifting, standing, walking and sitting limitations. (AR 317). Once again, therefore, substantial evidence supported the ALJ's conclusion. See Delgado v. Heckler, 722 F.2d at 572 ("[t]he [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence")

**2.    Whether the ALJ should have considered claimant for a closed period of disability.**

Claimant contends that the ALJ erred by failing to consider him for a closed period of disability in connection with his ankle fracture. (Doc. 13, p. 4). However, the Court finds no error.

Unless an impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least *twelve months* in order to be considered disabling. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 416.909. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1459 (9th Cir. 1995). Section 404.1505 provides in relevant part as follows:

> (a) The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted or can be expected to last for a continuous period of not less than 12 months*. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work or any other substantial gainful work that exists in the national economy.

20 C.F.R. § 404.1509(a) (italics added).

In the instant case, claimant alleges that his ankle fracture on December 27, 2002, left him disabled for at least one year. (Doc. 13, p. 4). However, as noted above and by the ALJ in his written determination, x-ray evidence in the record shows that claimant's ankle fracture was relatively well headed by September 10, 2003, substantially less than one year after the injury. (AR 16, 378). Recovery by September 10, 2003 was confirmed by another x-ray taken on January 28, 2004, at which time it was noted that claimant's ankle fracture was healed and that "[n]o significant change of the right ankle is seen as compared to the previous study of 9/10/03." (AR 371). Moreover, claimant himself admitted in his brief that he was wheelchair bound for only "approximately 10 months." (Doc. 13, p. 4). This, too, is confirmed by the administrative record, which shows that claimant was authorized for a wheelchair only through October 31, 2003, again less than the one-year durational requirement for a closed period of disability. (AR 383). Finally,

there is no report by any physician anywhere in the record stating that claimant was impaired by reason of his ankle injury beyond the time the time when his wheelchair authorization expired. The Court therefore concludes that the ALJ did not err in failing to find a closed period of disability. See Jolliff v. Barnhart, 2003 WL 21715327, at *2-3 (N.D. Cal. Jul. 16, 2003) (ALJ did not err in failing to analyze claimant's condition from the perspective of a closed period of disability from wrist and neck surgery where follow-up evaluations within one-year period showed that claimant "was 'doing reasonably well'" and where she was instructed to discontinue use of a neck brace within one-year of her surgical procedure). Absent legal error, and given substantial evidence, as here, supporting the ALJ's determination, the Court must affirm. Ukolov v. Barnhart, 420 F.3d at 1004 ("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or it is based on legal error'")(quoting Thomas v. Barnhart, 278 F.3d at 954.

**3.      Whether the ALJ properly assessed claimant's depression**

Claimant argues that the ALJ erred in failing to assess the severity of claimant's depression. (Doc. 13, pp. 6-8)(citing, inter alia, 20 C.F.R. § 404.1520a). This claim is unfounded.

A special evaluation technique is applicable to the evaluation of mental impairments. 20 C.F.R. § 404.1520a (Title II); 20 C.F.R. § 416.920a (Title XVI). If a medically determinable mental impairment exists, an ALJ "must then rate the degree of functional limitation resulting" therefrom. 20 C.F.R. § 404.1520a(b)(2) (Title II); 20 C.F.R. § 416.920(a)(b)(2)(Title XVI) (emphasis added). This rating process covers four broad functional limitation areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (Title II); 20 C.F.R.§ 416.920a(c)(3)(Title XVI). For the first three functional areas (daily living, social functioning, concentration), a five-point scale is used: none, mild, moderate, marked, and extreme. In rating the fourth functional area (episodes of decompensation), a four-point scale is used: none, one or two, three, four or more. 20 C.F.R. 404.1520a(c)4)(Title II); 20 C.F.R. § 416.920a(c)(4)(Title XVI). The aforementioned rating process is necessary because, in performing step three of the sequential analysis, the ratings come into play in the ALJ's determination as to whether a severe mental impairment is or is not a "Listed" impairment. See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C) (discussing mental

impairment ratings as used in the Listings).  Critically, the ALJ must *document* application of the special evaluation technique applicable to mental impairments.  20 C.F.R. § 404.1520a(e)(Title II); 20 C.F.R. § 416.920a(e)(Title XVI) ("At the administrative law judge hearing . . . we will document application of the technique in the decision").

Here,  and preliminarily, the ALJ observed that claimant's depression was "controlled with [the] prescribed medication" and that it had "no more than a minimal effect upon claimant's ability to function."  (AR 16, 18).  The ALJ then rated each of the first three functional limitation areas (activities of daily living, social functioning, and concentration, persistence or pace) as "mild," all based upon observed, objective criteria:

> Despite the diagnosis of depression and claimant's use of drugs, such has only imposed a mild limitation, if any, upon his activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence or pace.  In a Daily Activities Questionnaire, claimant stated he plays games on the computer and stays connected with friends on the telephone (Exhibit 4E, p. 1).  Witness during the prior hearing indicated claimant was able to perform some household chores (Exhibit 3A, p. 6).  Claimant has not been referred to a drug treatment program or any psychiatrist, psychologist, or mental health for treatment by his treating source.  Claimant has no past history of inpatient psychiatric hospitalization.  In view of the above, depression and polysubstance abuse are considered to be nonsevere impairments.  (AR 18).

While the ALJ did not specifically rate the fourth functional limitation area, episodes of decompensation, it is evident from the ALJ's recitation of facts, and from the record as a whole, that this factor was non-existent.  Accordingly, the Court finds that ALJ Berry properly assessed the degree of claimant's depression and that there was no legal error in this regard.  See Ukolov, 420 F.3d at 1004 (court may set aside a denial of benefits only if based upon legal error or if unsupported by substantial evidence).

## CONCLUSION

For the reasons outlined above, the Court finds no error in the ALJ's analysis.  As such, the Commissioner's decision to deny disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

///

1 | The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of
2 | defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Kent M.
3 | Williams.

5 | IT IS SO ORDERED.

6 | Dated:   **July 7, 2006**                                              **/s/ Theresa A. Goldner**
   | **j6eb3d**                                                     UNITED STATES MAGISTRATE JUDGE